## WILLCOX & GIBBS SEWING-MACH. CO. v. MERROW MACH. CO. et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

### No. 113.

PATENTS—VALIDITY AND INFRINGEMENT—SEWING MACHINES.
The Willcox & Borton patent, No. 472,094, for improvements in sewing machines intended especially for making overseams in sewing knit goods, construed, and *held* valid, and infringed as to claims 2 and 5.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause was submitted upon oral argument May 17, 1898, and an opinion reversing decree of the circuit court and directing the usual decree as to claims 2 and 5 of United States letters patent No. 472,094 was filed October 26, 1898. 93 Fed. 206. An application for rehearing was made by defendants November 18, 1898, and reargument was allowed upon the single "question of similarity of equivalency of defendants' hook looper to complainant's double-jawed looper." After rehearing upon briefs and oral arguments (January 30, 1899), the following memorandum of decision is now filed.

Edmund Wetmore and Chas. Howson, for appellant.

Melville Church and Chas. E. Mitchell, for appellees.

Reargued before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. In the original opinion (93 Fed. 206) this court discussed at considerable length the details of structure, characteristics, and functions of complainant's double-jawed looper and of defendants' hook looper. In the course of this discussion it was remarked that when the upper jaw or member in complainant's device has caught the loop of needle thread, and thereupon pulls away from the line of the needle's play, "the loop of needle thread goes with it, even when it rises above the edge of the fabric, because it is still retained in the curved, forward (i. e. nearest the seam) portion of the metal jaw which caught it." The opinion then proceeds:

"Precisely this is the action of defendants' device, as may be seen [from certain figures referred to]. Here, too, the upper jaw or member inserts its hook between needle and needle thread, and pulls away from the line of the needle's play, and the loop of needle thread goes with it *even when it rises above the edge of the fabric, because it is still retained in the curved, forward portion of the metal jaw which caught it.* * * * Having now raised the needle thread above the fabric, the next step of the process [in complainant's machine] is a forward movement of the looper. This causes the loop of needle thread to slip off the curved portion of the jaw which held it, whereupon it falls upon the lower jaw. * * *. *The same action is found in defendants' machine. As the looper moves forward, it reaches a position where the curved metal of the upper jaw* [down to the dotted line] *no longer holds it. It slips off that portion of the metal.* It does not fall upon the lower jaw, since the jaws are here united, but slides down on it," etc.

In the petition for reargument it was pointed out that the testimony did not warrant the statement italicized above, that the curved forward portion of the metal jaw (in defendants' machine) which caught the loop of needle thread "retains" such loop "even when it rises above the edge of the fabric," and does not part with it until the "looper moves forward"; and attention was called to the fact that complainant's expert admitted that that portion of defendants' hook which he contended was the equivalent of the upper jaw of complainant's looper retained its hold of the loop of needle thread only while moving in a horizontal direction, and lost such hold as soon as it began to rise. A careful re-examination of the parts as reproduced in the models and drawings indicated that, although there might be some slight elevation of the loop before the upper portion of the hook lost it, such elevation must necessarily be inconsiderable; it was not carried substantially above the fabric. Although it was not apparent that it made any material functional difference whether the loop slipped off just as the hook began to rise or later, reargument was ordered, since the precise point had not, perhaps, been quite fully discussed on the original argument. The conclusion heretofore expressed as to the equivalency of defendants' hook looper to the complainant's double-jaw looper remains unchanged by the reargument. We have found, as may be seen by reference to the original opinion, that "no compound motion overseam machine that ran or was capable of running at a speed at all comparable to complainant's has been found in

the prior art"; that "complainant's stitch-making [looper] mechanism is so organized as to permit itself to be driven at that rate, and that it is the first stitch-making [looper] mechanism which could be so driven"; that "the patentees seem to have made an ingenious and meritorious invention of utility and novelty to support a broad patent, and to have sufficiently described such invention"; that the patentees did not, by their description or drawings, "restrict their invention to the single class of machines known as single-thread machines"; that the "claims cover the devices of the patent, whether used in a double or single thread machine"; that, given the single-thread device illustrated in the drawings of the patent, there was no patentable novelty, in view of the state of the art, in adapting it to a double-thread machine by deepening the opening between the jaws, straightening the jaws, and punching an eye in the lower one to carry the second thread; that, "inasmuch as the claims cover a combination which takes the loop of needle thread from the lower side of the fabric around the edge to the upper side, leaving the stitch to be completed either as a single-thread or double-thread, infringement is not avoided merely by completing it as a double-thread stitch, if the functional operation of the parts performing the operation of the claim are identical, although there may be differences in form." Although we did not expressly say so, the above excerpts quite clearly indicate that we are of opinion that complainant was entitled to a fairly liberal application of the doctrine of equivalents.

It will be sufficient to refer to the extended analysis (in original opinion) of the defendants' device, wherein it was found that the metal composing it is in fact a looping device, with two members or jaws united on the side towards the seam instead of on the side away from it; that the upper portion of the metal in defendants' hook performs the same function as complainant's upper jaw, and in the same way, and that the lower part of such metal performs the same function, and in the same way, as the lower jaw of complainant's description and drawings, when modified "as the mere mechanical skill of the calling" would modify such lower jaw when the use of a second thread was desired. The additional illustrative model introduced by complainant on reargument, showing one of defendants' hooks, with metal connection made on the side away from the seam, and the original connection on the side towards the seam cut through, demonstrates the accuracy of these statements far more clearly than pages of description could possibly do. Most persuasive, too, is the fact that with the mere adjustment or change in the timing of complainant's driving mechanism defendants' looper is interchangeable with complainant's looper in complainant's machine. In the original opinion it was held to be immaterial that the loop passed from upper to lower member by a slide instead of by a fall. The further difference now pointed out, viz. that a very slight part of the elevation of the loop in defendants' machine is effected by the upper member, and the elevation completed by the lower member, seems equally immaterial. The change is certainly a trifling one, and we cannot find that there is any functional difference in the operation of the two devices. The object of the looper is to take a loop of needle thread from below the

fabric, and bring it up around the edge of the fabric into position for completing the stitch. In both machines this transit is effected by the successive action of both jaws. The distribution of the period of transit between them must be held immaterial when no functional change is involved in making it earlier in the one than in the other. No cause for modifying the original decision appears.